UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHRISTY BRIGHT,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 5:23-cv-101-BJD-PRL

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO UNITED STATES' MOTION TO DISMISS**

Plaintiff Christy Bright—a federal prisoner—has sued the United States under the Federal Tort Claims Act (FTCA) for claims of negligence and assault and battery arising from multiple instances of sexual assault and misconduct perpetrated by now-deceased Officer Phillip Tippett while she was incarcerated within this District at Federal Prison Camp (FPC) Coleman. As a condition precedent to suit, Ms. Bright's counsel timely mailed a completed SF95 to the Bureau of Prisons (BOP) per 28 U.S.C. § 2675(a). In its motion to dismiss [D.E. 5], the government asserts that BOP did not receive presuit notice and submits evidence and argument to help overcome the presumption of mailing under *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1241 (11th Cir. 2002). For the reasons articulated below, Ms. Bright has satisfied the presumption of mailing, which the government has not rebutted to warrant dismissal of this FTCA lawsuit.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Ms. Bright was a prisoner at FPC Coleman in May 2020, when Officer Tippett was assigned to Ms. Bright's dorm. Compl. ¶¶ 13, 25. Right after beginning this assignment, Officer Tippett began to sexually harass Ms. Bright and attempted to solicit sexual favors from her in exchange for drugs. *Id.* ¶¶ 29–41.  Ultimately, in or around July 2020, Officer Tippett cornered Ms. Bright, forced his tongue down her throat, and exposed his erect penis to her. *Id.* ¶¶ 42–47. Ms. Bright was spurred on by fellow inmates to report despite her fear of retaliation. *Id.* ¶¶ 60–67. Ms. Bright was placed in SHU until December 2020 due to a falsified incident report. *Id.* ¶ 66. Officer Tippett committed suicide on the grounds of FPC Coleman on December 25, 2020, *see id.* ¶¶ 77–78, and Ms. Bright was transferred to FCI Aliceville not long after. *Id.* ¶ 79.

On March 9, 2022, Ms. Bright, through counsel, mailed the attached completed SF95 to the BOP's Southeast Regional Office. *Id.* ¶ 2; *see* Declaration of James Cook ("Cook Decl.") ¶¶ 4–5, contemporaneously filed herewith and incorporated by reference; [D.E. 5-3, 5-4]. *See also* 28 C.F.R. § 543.31(c) ("if the loss or injury occurred in a specific regional [BOP] office or within the geographical boundaries of the region, you may either mail or deliver the claim to that regional office"). Having received no response and more than six months having passed since its filing in March 2022, Ms. Bright timely filed this FTCA lawsuit against the United States. Compl. ¶¶ 3–4.

## II.     MEMORANDUM OF LAW

To pursue an FTCA claim against the United States, "a federal agency must receive an SF95 or other written notification from a claimant before the claimant can proceed against that agency." *Barnett*, 283 F.3d at 1241; 28 U.S.C. § 2675(a). Here, the government raises a factual attack on the Court's subject-matter jurisdiction to hear Ms. Bright's claim because BOP purports not to have received her SF95. As *Barnett* explains, in such an instance the district court "in essence […] conducts a bench trial on the facts that give rise to its subject matter jurisdiction." *Barnett*, 283 F.3d at 1238.

### A. Ms. Bright has met her burden to establish timely notice to BOP.

To exhaust administrative remedies under the FTCA, a plaintiff must perform two discrete acts: (1) provide the appropriate agency with written notification of the incident and a claim for money damages in a sum certain within two years after the claim accrues; and (2) allow the agency six months to consider the claim presented. *See* 28 U.S.C. § 2401(b); 28 C.F.R. § 142. In this Circuit, when notice under the FTCA is properly mailed, there is a rebuttable presumption that it was received by the addressee. *Barnett*, 283 F.3d at 1239 (citing *Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850 (11th Cir. 1996)). The Eleventh Circuit has explicitly not recognized affirmative evidence of receipt as a requirement for the presumption of notice under the FTCA. *Id.* Accordingly, a plaintiff need only demonstrate the following to establish a presumption of notice under the FTCA: "(1) the document was properly

3

addressed; (2) the document was stamped; and (3) the document was mailed." *Id.* at 1240 (quoting *Gonzales Packing Co. v. E. Coast Brokers and Packers, Inc.*, 961 F.2d 1543, 1545 (11th Cir. 1992).) If the Plaintiff establishes a presumption of notice, the burden shifts to Defendant to establish that Plaintiff did not provide notice. *Id.*

The *Barnett* court concluded that the presumption of receipt attached in its case because the plaintiff provided uncontradicted evidence that he mailed the necessary document; the document was mailed in a "business reply mail" envelope that had been sent to him by the government agency, thus satisfying the requirement that the document be properly addressed; and the envelope did not need to be stamped because, as was clearly marked on it, the "postage [would] be paid by [the] Department of Veteran Affairs." *Id.*

Here, within two years of the alleged conduct in the Complaint, Ms. Bright's counsel sent the attached SF95 via certified mail to BOP at its Southeast Regional Office in Atlanta, Georgia. *See* Cook Decl. ¶¶ 4–5; [D.E. 5-3, 5-4]. *See also* 28 C.F.R. § 543.31(c). Given that the SF95 mailing was postmarked by the U.S. Postal Service on March 9, 2022—within the statute of limitations period—Ms. Bright has met her burden to establish that the SF95 was timely received by BOP.

**B. The government has not rebutted the presumption of mailing.**

The government has failed to meet its burden of demonstrating sufficient evidence that Ms. Bright did not timely exhaust her administrative remedies. "[T]he presumption of receipt is 'not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their

4

duty and the usual course of business; and, when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case ... in determining the question whether the letters were actually received or not.'" *Barnett*, 283 F.3d at 1240 (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193–94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884)).

Central to the *Barnett* court's determination that the presumption of mailing under the "mailbox rule" was not rebutted was that the presuit notice was mailed to an administrative office and not a specific individual within the office. *Barnett*, 283 F.3d at 1241 ("This distinction [would be] crucial."). In the event of mailing to a specific person, all the court would need is "testimony from that person as to whether he or she had received the item." *Id.* At the same time, "determining whether an office receives an item mailed to it is another, more complicated matter altogether." *Id.* Under that circumstance—as here, where Ms. Bright mailed her SF95 to BOP's regional office, and not a specific employee—would require circumstantial evidence to determine that the mail was not received. *See id.*

In its motion, the government relies on several documents to overcome the presumption of mailing. As explained below, the government's evidence is not enough to carry its burden.

*First*, the government relies on an online tracking printout from the U.S. Postal Service based on copies of the SF95 and certified mail stamp provided by Ms. Bright's counsel [D.E. 5-3], which states that as of March 18, 2022, Ms. Bright's SF95 was "Moving Through Network" after departing from the Atlanta Distribution

5

Center. [D.E. 5-4]. The government claims that this is "incontrovertible evidence" that "conclusively establishes" that Ms. Bright's claim was not received by BOP. [D.E. 5 PageID 29–30]. Not so. The printout from the U.S. Postal Service's website is hardly conclusive of delivery or lack thereof and the government presents no evidence that suggests the online tracking portal *always* notes when a parcel is delivered. In fact, according to the U.S. Postal Service, "[t]he absence of a delivery scan on a mailpiece does not necessarily indicate that the item was not delivered. It is possible the piece was delivered but the scan was not captured." *See* U.S. Postal Service, *USPS Tracking® - The Basics*, https://faq.usps.com/s/article/USPS-Tracking-The-Basics (last visited May 7, 2023). The lack of a notation of "delivery" on the tracking portal does not conclusively establish non-delivery. It merely establishes that in March 2022, the SF95 was received at and departed from the Atlanta mail distribution center. Whether the SF95 was delivered or undelivered is not established by this evidence.

*Second*, the United States offers two declarations by staff members of BOP to introduce how mail is sorted and processed at the Atlanta Regional Office. The declarations nominally attempt to overcome the shortcomings of the evidence proffered in *Barnett* but fail. The *Barnett* court found that the proffered evidence failed to overcome the presumption of receipt because there was no evidence to draw the conclusion that no one in the office could have received the notice. *Barnett*, 283 F.3d at 1241–42. The *Barnett* court suggested that what might be needed is circumstantial evidence of the "office's practice and procedure for receiving and filing incoming

6

mail" to allow a court to infer that the mail was not received. *Id.* at 1241. That said, some courts have concluded that mere "habit and custom" of the handling of mail is negative evidence and has "no appreciable value in rebutting the presumption of receipt," but provides a "presumption that the ordinary course of business or procedure was followed on a given day and that, alone, cannot overcome another presumption." *Rios v. Nicholson*, 490 F.3d 928, 933 (Fed. Cir. 2007) (quotation omitted).

Here, the government offers declarations by Kevin Littlejohn—a paralegal specialist at BOP's Southeast Regional Office—and Jeanie Register—a legal assistant at Coleman. To begin with, the Code of Federal Regulations requires an SF95 to be delivered to the nearest regional office. 28 C.F.R. § 543.31(c). The allegations and evidence proffered in response to the defense's arguments point to the SF95 being mailed to BOP's Southeast Regional Office, not Coleman. Compl. ¶ 2; Cook Decl. ¶ 5. Whether the Southeast Regional Office forwarded Ms. Bright's SF95 to Ms. Register at Coleman so that she could upload the claim into *Content Manager* does not dispose of whether BOP timely received Ms. Bright's presuit notice. For that reason, Ms. Register's testimony cannot overcome the presumption of mailing. As in *Rios*, her testimony only supports that after reviewing *Content Manager* she could not find the claim and therefore it is *possible* that she did not receive it from BOP's Southeast Regional Office. 490 F.3d at 933.

Mr. Littlejohn—who, on the other hand, *is* affiliated with the Southeast Regional Office—offers that mail is first received at an outside screening site, where

it is placed through an x-ray screening system and then taken to a station to detect biological or aerosol threats before it is moved to the main office at the Southeast Regional Office. Neither Mr. Littlejohn nor Ms. Register assert that they work in this screening area or have any knowledge of the collection, recording, or handling of parcels at the screening stage. It is also not clear from Mr. Littlejohn's declaration how many employees work in the screening center, or in other words, how many opportunities there are for the mail to get lost or not sorted properly for transfer from to the Southeast Regional Office. And it is similarly unclear whether the screening site is a third-party contractor of BOP or part of its operations.

While Mr. Littlejohn and Ms. Register both provide information on the mechanics of incoming tort claims—presumably to capture the policies and procedures that were missing in rebutting Barnett's claims—their testimony assumes there were no issues in the chain of custody from receipt at the screening site, to transfer to the Southeast Regional Office, to "forward[ing]" to the Legal Office, after which time the mail would have been stamped and forwarded to the appropriate Consolidated Legal Center. [D.E. 5-1 ¶¶ 3–4]. Even if an inference is taken that any SF95 received by the Southeast Regional Office's screening site would eventually reach their hands, that does not establish that it was not misplaced before they could receive it. That was the exact problem the *Barnett* court found with the government declarants in that case. There, the Department of Veterans Affairs witnesses stated that they had "primary responsibility for the Medical Care Cost Recovery Program (MCCR) involving cases referred to the Office of Regional Counsel from all Medical

centers in Florida" including the Veterans Administration Medical Center in Miami (VAMC Miami) relevant there and "primary responsibility for the processing and investigation of all administrative tort claims filed pursuant to the [FTCA] involving the VAMC Miami." *Barnett*, 283 F.3d at 1242 n. 9. As the Eleventh Circuit noted "[n]either of these roles necessarily indicate[d] that either [witness] would have implicit knowledge of whether the Office of Regional Counsel received Barnett's SF95; they only show[ed] that they might have eventually reviewed the form, if it was not misplaced after receipt." *Id.* The same is true here. The government does not offer any witness from the point of initial receipt of the mail, but witnesses who might be third or fourth in the chain of custody for receipt of mail at the Southeast Regional Office, where Ms. Bright timely mailed her SF95. Instead, the government's witnesses address the policy and procedural aspects of incoming tort claims without substantively addressing the issues that prompted the *Barnett* court to suggest that more is necessary to chip away at the presumption of mailing. It is not enough that policy and procedure be explained, but what the government would need to do under *Barnett*—which it has not—is explain to the Court how it would not be possible, or at least implausible, that mail could be received by the screening site at the Southeast Regional Office and not get stamped by Mr. Littlejohn and forwarded to Ms. Register.

      Finally, in a last-ditch effort to improperly shift the burden back to Ms. Bright, the government asserts as its last argument that Ms. Bright "cannot credibly claim due diligence in ensuring BOP's receipt of her claim" because she had the ability to

9

track the SF95 and failed to follow up with BOP after not having received any response. [D.E. 5 PageID 30–31]. The burden is only on Ms. Bright to prove mailing, not to track down every item mailed to make sure it is received, and the Court should not indulge the government in its effort impose a higher burden on Ms. Bright than what *Barnett* requires.

### III.   CONCLUSION

Accordingly, for all these reasons, the Court should deny the government's motion to dismiss. Ms. Bright has met her burden to show that she timely mailed her SF95 to BOP; the government has not come forward with evidence sufficient to rebut that presumption.

Dated: May 8, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32302
Tel. (305) 523-9023
james@slater.legal

-and-

*/s/ James V. Cook*
James V. Cook (FBN 0966843)
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
Tel. (850) 222-8080
Fax (850) 561-0836
cookjv@gmail.com

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on May 8, 2023, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: /s/ *James M. Slater*
James M. Slater